Dorothy COWAN, U.S. Bankruptcy Trustee for the Estate of E.H. "Bert" Rhodes, Plaintiff,

v.

FIDELITY INTERSTATE LIFE INSUR-ANCE CO. a/k/a Americare Insurance Co., Beneficial Standard Life Insurance Co., and ADCO Ltd. a/k/a Assurance Distributing Co., Ltd.

Civ. A. No. 87–4902.

United States District Court, E.D. Louisiana.

June 28, 1988.

Cummins & White, Barry Van Sickle, Los Angeles, Cal., Roger H. Gray, Landwehr & Hoff, Merrill T. Landwehr, Trial Atty., Darryl Landwehr, New Orleans, La., for plaintiff.

McGlinchey, Stafford, Mintz, Cellini & Lang, Dermot S. McGlinchey, Trial Atty., Stephen W. Rider, Alexander M. McIntyre, Jr., New Orleans, La., for defendants Fidelity Interstate Life and Beneficial Standard Life.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This diversity matter is before the Court on motion of defendants Fidelity Interstate Life Insurance Company a/k/a Americare Insurance Company ("Fidelity Life") and Beneficial Standard Life Insurance Company ("Beneficial Life") to dismiss, or, in the alternative, for a more definite statement, and to strike pursuant to Rule 12. By consent of counsel, the Court took the matter under submission without oral argument. For the following reasons, the Court now grants the motion in part and denies it in part.

### I.

E.H. "Bert" Rhodes was allegedly a Louisiana insurance sales agent who was under appointment to sell life insurance policies issued by Fidelity Life during a period from 1980 to 1982. Mr. Rhodes has filed bankruptcy proceedings in this District, and Dorothy Cowan, who is plaintiff herein, has been appointed his Bankruptcy Trustee.

On November 24, 1986, Mr. Rhodes sued defendants Fidelity Life and Beneficial Life along with ADCO Ltd. a/k/a Assurance Distributing Company ("ADCO") in the United States District Court for the Central District of California ("the *Rhodes* matter"). In his complaint, he alleged a slew of tort and contract claims arising out of his apparently unsuccessful dealings with the defendants. As defendants admit, "[e]ssentially, the complaint alleges that defendants willfully and fraudulently breached a contract with Elbert Rhodes and conspired with one another to make fraudulent misrepresentations with the intent to destroy Rhodes' present and future business."

In early 1987, the defendants in the *Rhodes* matter apparently moved for summary judgment on the pleadings. While this Court does not have the record from the *Rhodes* matter, these defendants apparently moved on the ground (perhaps, among other grounds) that the Bankruptcy Trustee, not the debtor, was the proper person to pursue at least some of the claims alleged in the *Rhodes* matter. Judge Gadbois, to whom the matter was assigned, granted the motion, but it is unclear exactly which claims he dismissed. On the one hand, an Order Transferring Proceedings, prepared by counsel for Ms. Cowan and Mr. Rhodes and signed on January 7, 1988, states that "plaintiff Bert Rhodes was dismissed as a party plaintiff

for certain causes of action." On the other hand, a Notice of Ruling, prepared by counsel for defendants and filed May 21, 1987, states that "the Court ruled that plaintiff's Complaint be dismissed without prejudice" on May 4, 1987. These two texts are obviously ambiguous on the issue of whether Judge Gadbois dismissed all or merely part of the claims in the *Rhodes* matter.

On June 15, 1987, counsel for Ms. Cowan and Mr. Rhodes filed in the Los Angeles Courthouse a certain pleading, which recites the same counts found in the *Rhodes* complaint, names the same three defendants, but names Ms. Cowan, instead of Mr. Rhodes, as the sole party-plaintiff. The clerk accepted the pleading (along with a filing fee of $120 and a notice of a related matter, namely the *Rhodes* matter) as commencing a new matter (namely, the instant matter, occasionally also referred to as "the *Cowan* matter") and assigned it a new docket number. Suggesting that this pleading was intended merely to amend the *Rhodes* complaint, counsel for Ms. Cowan and Mr. Rhodes argue that this opening of a second matter was "an error on the part of the clerk at the filing window." Whether the clerk opened a new matter in error or not, no party has moved the court in California to correct any "error."

On July 24, 1987, in lieu of filing an answer, defendants Fidelity Life and Beneficial Life moved in the *Cowan* matter to dismiss and/or for a more definite statement and/or to strike. Soon thereafter, on July 31, 1987, they further moved for a transfer of venue to this Court under 28 U.S.C. § 1404(a). Without ruling on the former motion and without any explanation for his disposition of the latter motion, Judge Gadbois granted the latter motion on October 8, 1987; pursuant to this order, the matter (which is the instant, *Cowan* matter) was transferred to this Court on October 14, 1987.

Referring to the above-mentioned Order Transferring Proceedings, counsel for Ms. Cowan and Mr. Rhodes assert that Judge Gadbois also transferred the *Rhodes* matter to this Court. A close reading of the order, however, belies their argument, for the order states that "the companion case of *Rhodes v. Fidelity*, U.S.D. C Case No. 87 03834 SVW (GHKx) be and hereby is ORDERED TRANSFERRED to the Eastern District of Louisiana forthwith." In other words, as the docket number indicates, the order purports to transfer the *Cowan* matter, not the *Rhodes* matter.[1] This conclusion is confirmed by a simple look at the record that was transferred to this Court: the *Cowan* record was sent to this Courthouse, the *Rhodes* record was not.

The *Cowan* complaint alleges diversity jurisdiction and asserts twelve purported causes of action under California law:[2] (1) breach of contracts between Fidelity Life and Rhodes, (2) breach of contract between defendants Fidelity Life and ADCO wherein Rhodes was a third-party beneficiary as

---

1. Because the *Cowan* matter was actually transferred to this Court two months before Judge Gadbois signed this order on January 7, 1988, the purpose and effect of the order is puzzling.

   According to the Clerk's Office in Los Angeles, the entire *Rhodes* matter was dismissed on May 4, 1987 and finally closed on October 29, 1987, with no further action having been taken in that matter thereafter. The *Rhodes* record still remains in the Clerk's Office in Los Angeles.

   This Court surmises that, in preparing the order, counsel for Ms. Cowan and Mr. Rhodes intended the *Rhodes* matter to be transferred (they would interpret the phrase "of *Rhodes v. Fidelity*" as being an appositive instead of a possessive) but erroneously included the wrong docket number (thereby ruling out their intended syntactic construction). Whatever their intent, however, the order by its terms and effect did not transfer the *Rhodes* matter.

2. Because the action was transferred to this Court under 28 U.S.C. § 1404(a), this Court, following *Erie*, must apply the conflict-of-laws rules of the State from which the action is transferred (viz., California state conflict-of-laws rules) for determining what state's substantive law applies. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n. 8, 102 S.Ct. 252, 259 n. 8, 70 L.Ed.2d 419 (1981) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964)). Because each of the contracts at issue includes a California choice-of-law clause (*see* Exhibits 1–3 to complaint) and all parties appear to agree that substantive California law applies to this action, this Court presumes that California conflict rules apply substantive California state law to this dispute.

"an ADCO agent," (3) accounting of the moneys due Rhodes under these contracts, (4) tort breach of the covenant of good faith and fair dealing in the contracts between Fidelity Life and Rhodes, (5) bad faith tort denial of contractual obligations in the contracts between Fidelity Life and Rhodes, (6) fraud and deceit, (7) intentional interference with economic advantage, (8) negligent interference with economic advantage, (9) negligent infliction of emotional distress, (10) intentional infliction of emotional distress, (11) conspiracy among defendants to commit the acts alleged in Counts 1–10, and (12) declaratory relief under 28 U.S.C. § 2201. Plaintiff has demanded a jury.

Having still never filed an answer, defendants Fidelity Life and Beneficial Life[3] now reurge their former motion. They raise five points:[4] (A) dismiss the entire complaint for impermissible vagueness or, alternatively, require plaintiff to plead a more definite statement; (B) dismiss Count 6 for failure to plead with particularity or, alternatively, require plaintiff to plead fraud with particularity; (C) dismiss Counts 7–8 for lack of standing by plaintiff; (D) dismiss Counts 9–10 and strike the punitive damages claims in Counts 4–6 for lack of standing by plaintiff; and (E) dismiss Counts 4 and 5 for failure to state causes of action upon which relief can be granted.

## II.

For the following reasons, the Court (A) DENIES defendants' first ground; (B) DENIES their second ground to dismiss, but GRANTS their second ground for a more particular statement; (C) GRANTS IN PART and DENIES IN PART their third ground, with leave for plaintiff to amend her complaint to add Mr. Rhodes as the plaintiff for the portion now dismissed; (D) DENIES their fourth ground; and (E)

GRANTS their fifth ground as to Count 4, but DENIES it as to Count 5.

### A. *Vagueness*

Defendants argue that plaintiff's complaint is impermissibly vague in that "plaintiff fails to set forth the dates, either generally or specifically, on which the wrongful acts allegedly occurred." They then argue that the complaint's "vagueness precludes defendants from pleading certain affirmative defenses, such as the running of applicable prescription periods of statutes of limitation, or otherwise formulating a responsive pleading." Defendants' memorandum focuses primarily on the counts concerning the contract breaches.

In reply, plaintiff first argues that "[e]ven where no dates whatsoever are alleged in a complaint, this does not in any manner *preclude* defendants from asserting the statute of limitations" and that "[d]efendants will not be prejudiced by being required to plead a defense which later turns out to be meritless." As a secondary point, plaintiff suggests that her complaint does in fact plead the material dates with sufficient particularity.

The Court must reject plaintiff's first position outright. This bold position ignores the mandate of F.R.Civ.P. 9(f), which specifically states that "[f]or purposes of testing the sufficient of a pleading, averments of time and place are material and shall be considered like all other averments of material matters." Professors Wright and Miller emphasize that the primary purpose of the Rule is to "provide a mechanism for the early adjudication or testing of certain claims and defenses—most notably, the statute of limitations." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1308, at 438 (1969). Since Rule 9(f) makes allegations of time material, a defendant may raise the limita-

---

**3.** Pursuant to F.R.Civ.P. 4(j), this Court dismissed plaintiff's claims against ADCO for plaintiff's failure to serve ADCO within 120 days of the filing of the complaint. *See* Order of Partial Dismissal, signed Dec. 18, 1987.

**4.** In their motion, defendants suggest a sixth point, that Count 9 states no cause of action

under California law; their memorandum in support of their motion, however, makes no mention of this sixth point. Thus, and because digests on California law are not readily available to this Court, the Court does not consider the point at this time.

tion defense on a Rule 12(b)(6) motion in dismiss, before he files any answer to the complaint. *See Pierce v. County of Oakland,* 652 F.2d 671, 672 (6th Cir.1981) (per curiam) (citing Wright & Miller, *supra,* § 1308, at 439 & n. 80); *Herron v. Herron,* 255 F.2d 589, 593 (5th Cir.1958). In other words, a plaintiff is not relieved from having to make specific allegations of time, when such are material, merely because a defendant may have the option to assert an affirmative limitation defense. More distressing, however, is plaintiff's suggestion that defendants should simply assert limitation defenses, whether or not the defenses have merit. To adopt such a position would violate Rule 11's objective good faith requirement that pleadings be made only "after reasonable inquiry [that the pleading] is well grounded in fact." The position would vitiate the guiding policy in F.R. Civ.P. 1 for "the just, speedy, and inexpensive determination of every action" by encouraging litigation by ambush.

Thus, the Court must scrutinize plaintiff's laborious complaint in order to determine if defendants' assertions are valid. As explained below, the Court finds they are not.

■ Three paragraphs in Count 1 set forth the actual breaches alleged for the contracts between Fidelity Life and Rhodes. Paragraph 19 lists five alleged breaches: that Fidelity Life has *never* processed Rhodes' insurance applications in a timely manner, did *often during the approximately three year contract term* collect premiums in an improper manner, did *at various times during the contract term* keep inaccurate records on applications Rhodes submitted to it, has *never* provided accurate records or accountings, and has *never* paid Rhodes his proper commissions. Paragraph 20, alleges that *in September 1982,* contrary to its prior representations to Rhodes, Fidelity ceased paying advance commissions to Rhodes. Paragraph 22, a recap paragraph, appears to explain that the above breaches amounted

to a *continual* breach of the covenant of good faith and fair dealing, which is implied in every contract under California law, *Seaman's Direct Buying Service, Inc. v. Standard Oil Co. of California,* 36 Cal.3d 752, 768, 206 Cal.Rptr. 354, 686 P.2d 1158, 1166 (1984).

Similarly, paragraph 28 in Count 2 sets forth the actual breaches alleged for the contracts between Fidelity Life and ADCO, wherein plaintiff alleges Rhodes to have been a third-party beneficiary.[5] Plaintiff alleges a *complete* failure on Fidelity Life's part during the *entire* term of the contract to comply with paragraphs 4(a) and 17 of the contract.

In short, plaintiff alleges what amounts to an almost constant, complete failure on Fidelity's part to comply with its various contract obligations. While plaintiff's allegations are broad reaching, the Court must presume at this initial, pleading stage that plaintiff and her counsel have complied with Rule 11's good faith pleading requirements. The Court cannot state, as a matter of law, that a defendant would be unable to form responsive pleadings to these allegations; if defendants in good faith believe they were not in breach as plaintiff alleges, then they ought simply deny the allegations.

Concerning defendants' ability to assert a limitation defense, the Court finds that sufficient information is set forth. Construing paragraphs 22, 29, and 40 together, the Court notes that plaintiff alleges that Rhodes was unable to learn of these breaches until August 1986. Noting that limitation periods generally demand much less than a plaintiff's complete awareness of the full extent of a breach in order for a limitation period to begin running, the Court has grave doubts that plaintiff could survive a summary judgment motion; such, however, is for a later time.

Instead of requiring plaintiff to elaborate on her pleadings, the Court encourages de-

---

**5.** The Court questions how, as a matter of law, a plaintiff can seek damages as a third party beneficiary to a contract that the contracting parties may have agreed to terminate, or that by its own terms did terminate, prior to the plaintiff's leaning about the contract. Because the defendants do not raise this issue here, however, the Court does not decide the issue at this time.

fendants to make full use of discovery in order to learn exactly what evidence plaintiff believes supports her position. *See* Wright & Miller, *supra,* § 1376, at 737–38.

Accordingly, the Court denies the motion to dismiss the entire complaint or for more definite statement.

### B. *Fraud and Particularity*

Similarly dissatisfied with plaintiff's claims of fraud and deceit (Count 6), defendants assert that "[t]he complaint is entirely devoid of any factual allegations which support plaintiff's legal conclusion that defendants Beneficial and Fidelity somehow defrauded plaintiff's bankrupt." Plaintiff merely replies that "the complaint contains allegations of no less than six specific misrepresentations made by defendant over the course of business dealings with the plaintiff['s bankrupt]." Again, the Court must scrutinize the complaint in order to determine who is right.

To quote Professors Wright and Miller again, "[t]he general assertion of 'fraud' or 'fraudulent conduct' serves no informative function and therefore is insufficient to raise an issue as to fraud without supporting particulars." Wright & Miller, *supra,* § 1298, at 415 & n. 92. An allegation that a fraud was committed on "Date X and at other times" is no more helpful in setting forth the circumstances of the fraud under F.R.Civ.P. 9(b) than is an allegation that the fraud was committed on "Date X," and thus the "at other times" allegation must be pled with greater particularity. In order to satisfy F.R.Civ.P. 9(b), plaintiff must allege "the time, place and contents of the false representations [or omissions], as well as the identity of the person making the misrepresentation [or omission] and what was obtained or given up thereby." *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir. 1982), *aff'd in relevant part en banc,* 710 F.2d 1361 (8th Cir.), *cert. denied sub nom. Prudential Insurance Co. of America v. Bennett,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

Plaintiff's allegations of fraud are found in paragraphs 52–54 and 57–59 of the complaint.[6] A few are sufficient, most are not. Paragraph 53 is insufficient inasmuch as it pleads neither the person(s) who made the alleged misrepresentations nor any specific time when such misrepresentations were made; the assertion that such misrepresentations were made "[a]t various times from about 1980 through late 1982" is simply not enough to satisfy F.R. Civ.P. 9(b). All but the last assertion in paragraph 52 fail for the same reason and for the further reason that they simply make conclusory allegations of the nature of the fraud. In pleading the name of the person who allegedly stated the misrepresentation and the time when he allegedly stated such, the last assertion in that paragraph is better, but it similarly fails for making only general, vague allegations of the content of the alleged misrepresentation. Paragraphs 56–59 verge on insufficiency, but the Court cannot say as a matter of law that their allegations fail; accordingly, the Court finds these four paragraphs sufficient, but only to the extent of the allegations of fraud made "[a]t or about the time of contracting with Rhodes," since the contracting date is evidenced by the contracts attached to the complaint. Finally, paragraph 54 is sufficient, but only to the extent of the alleged September 1982 misrepresentation.

In sum, the Court finds five sufficient allegations of fraud and thus must deny the motion to dismiss; the Court, however, grants the motion for a more particular statement as to the above allegations the Court finds insufficient as presently stated. Pursuant to F.R.Civ.P. 12(e), plaintiff shall amend her complaint in accordance herewith within 10 days of the entry of this order; otherwise, the insufficient allegations herein shall automatically be struck with prejudice.

### C. *Trustee's Standing*

Defendants move to dismiss the claims for intentional and/or negligent interfer-

---

**6.** The allegations in paragraphs 55 and 60–61 do not amount to allegations of other, separate acts of fraud.

ence with economic advantage (Counts 7 and 8) on the ground that plaintiff lacks standing under F.R.Civ.P. 17(a) as the real party in interest to assert these claims—that only Mr. Rhodes himself, and not his Bankruptcy Trustee, may assert these claims—because such claims do not become part of bankruptcy estates pursuant to 11 U.S.C. § 541.

Plaintiff does not contest that a bankruptcy trustee lacks standing to assert such claims; instead, she simply argues that (1) these claims are properly asserted in the *Rhodes* matter or (2) Rhodes is already an actual party-plaintiff to the instant, *Cowan* matter.

Plaintiff is mistaken. As to her first point, the instant motion is not concerned with what claims may possibly remain in the *Rhodes* matter, but only with the claims asserted in the separate *Cowan* matter; whatever claims remain in the *Rhodes* matter is, thus, irrelevant.[7] As to her second point, a proper reading of the *Cowan* complaint indicates there is but one plaintiff, Dorothy Cowan. The caption reveals but one name, hers; the opening sentence reveals but one plaintiff, her; and the complaint refers to plaintiff in the singular and distinguishes between plaintiff and Mr. Rhodes. The reference to Mr. Rhodes in paragraph 2 of the complaint cannot be read to suggest that Mr. Rhodes is a plaintiff in addition to Ms. Cowan. The paragraph does not purport to name Mr. Rhodes as a plaintiff; it merely identifies the bankruptcy relationship between Ms. Cowan and Mr. Rhodes. Of course, the fact that only one person is a plaintiff in this case at this time does not mean necessarily that a second person, Mr. Rhodes, could not be added as an additional plaintiff. *See* F.R.Civ.P. 15, 17. But at present, Ms. Cowan is the sole plaintiff before the Court in this action.

As to defendants' position, the Court agrees that claims of interference with economic advantage involve alleged injuries to a person's future earning capacity and that a bankruptcy debtor, not the bankruptcy trustee, is the proper person to pursue the damages to the debtor's post-bankruptcy-filing earning capacity. *See Boudreau v. Chesley*, 135 F.2d 623, 624 (1st Cir.1943); *Gering v. Superior Court*, 37 Cal.2d 29, 230 P.2d 356, 356–57 (1951) (interpreting a final order of a bankruptcy referee); *Chitwood v. Carlsen*, 346 So.2d 1149, 1151 (Ala.1977) (following *Gering* and *Boudreau* ). The Court disagrees, however, with defendants' conclusion that a complete dismissal of these claims is thus warranted. The portion of these claims that concern future earning capacity from the date of injury up to the date the bankruptcy case was commenced (according to the *Cowan* complaint, September 29, 1986) remains property of the bankruptcy estate. Thus, the trustee is the proper party for the portion of the claims that relate to the debtor's earning capacity from date of injury to date of petition, while the debtor himself is the proper party for the remaining portion of these claims, which relate to his earning capacity after the date of petition.

In sum, the Court grants the motion to dismiss the trustee's claims for interference with economic advantage to the sole extent the claims relate to Rhodes' earning capacity for the period following the commencement of his bankruptcy case; the Court grants leave, however, for plaintiff to amend her complaint within 10 days of the entry of this Order to name Mr. Rhodes as the proper party-plaintiff to these dismissed claims.[8]

### D. *More Standing*

The parties make the same arguments over the claims for negligent and/or intentional infliction of emotional distress (Counts 9 and 10) and for punitive damages (included in Counts 4 through 6) as they do for the economic-advantage claims discussed in Part II(C) above.

---

7. It is for this reason that any purported transfer of the *Rhodes* matter is irrelevant to this motion.

8. While the Court grants leave to amend, the Court expresses no opinion whether any added claim would be barred by collateral estoppel, res judicata, or other grounds.

For the reasons already stated, plaintiff's position is misplaced. Defendant's position here fares no better.

The cases defendants cite, *Purdy v. Pacific Automobile Insurance Co.,* 157 Cal. App.3d 59, 79–80, 203 Cal.Rptr. 524, 536 (1984); *Ruebush v. Funk,* 63 F.2d 170, 173 (4th Cir.1933), relate to section 70a(5) of the Bankruptcy Act, former 11 U.S.C. § 110(a)(5) (1976), which is the predecessor statute to section 541 of the present Bankruptcy Code. The applicable provision to the instant matter is, however, 11 U.S.C. § 541.

■ As the Ninth Circuit has explained, section 541 of the new Code has broadened the definition of property that comes within the bankruptcy estate; for determining if a debtor's property (viz., a right of action) passes to his bankruptcy estate, it is no longer relevant whether the property is assignable or not under state law. *See Sierra Switchboard Co. v. Westinghouse Electric Corp.,* 789 F.2d 705, 707–08 (9th Cir.1986) (following *Tignor v. Parkinson,* 729 F.2d 977 (4th Cir.1984) and rejecting *In re Baker,* 709 F.2d 1063 (6th Cir.1983)). The Fifth Circuit appears not to have addressed this issue yet. The only circuit that upholds defendants' position, the Sixth Circuit, offers no support or explanation for its single-sentenced, per curiam assertion that a "bankruptcy estate includes choses in action and claims held by the debtor against third parties only if the claims could have been assigned prior to the bankruptcy." *See Baker,* 709 F.2d at 1064. Likewise rejecting *Baker,* this Court wholly concurs with the Fourth and Ninth Circuits' more critical analysis.

In sum, the Court denies the motion to dismiss, on grounds of standing, the trustee's claims for emotional distress and punitive damages.

### E. *Breach of Covenant of Good Faith and Fair Dealing*

Defendants last urge that plaintiff's tort claims for breach of the covenant of good faith and fair dealing (Count 4) and for bad faith denial of contractual relations (Count 5) do not state causes of action under California law.

In 1984, the California Supreme Court first addressed "whether, and under what circumstances, a breach of the implied covenant of good faith and fair dealing in a commercial contract may give rise to an action in tort." *Seaman's Direct Buying Service, Inc. v. Standard Oil Co. of California,* 36 Cal.3d 752, 767, 206 Cal.Rptr. 354, 686 P.2d 1158, 1166 (1984). It held that such a breach would give rise to a tort in two instances: (1) when there exists a "special relationship" between the contracting parties or (2) "when, in addition to breaching the contract, [a party to the contract] seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists" [i.e., by "stonewalling"]. *Id.* at 768–69, 206 Cal. Rptr. at 362–63, 686 P.2d at 1166–67.

■ It is, thus, not the law in California that " *'whatever the contractual relationship,* a bad faith position taken by a contracting party exposes that person to tort liability.'" *Multiplex Insurance Agency v. California Life Insurance Co.,* 189 Cal. App.3d 925, 934, 235 Cal.Rptr. 12, 18 (quoting *Quigley v. Pet, Inc.,* 162 Cal.App.3d 877, 889, 208 Cal.Rptr. 394, 397 (1984)) (emphasis from *Quigley* ), *review denied* (Cal. 1987). Mere pleading and proof of such a position is, alone, insufficient as a matter of law to establish tort liability under California law. *See id.; cf. Seaman's,* 36 Cal. 3d at 774–84, 206 Cal.Rptr. at 366–73, 686 P.2d at 1170–77 (Bird, C.J., dissenting on this point) (urging that such should be the law in California).

In *Multiplex,* a California Court of Appeal addressed the two *Seaman's* torts in the insurance agent contract context. Contrary to the last rule stated above, the trial court had instructed that the defendant insurance company was liable for tort damages merely if it failed to deal fairly and in good faith. *See* 189 Cal.App.3d at 937, 235 Cal.Rptr. at 20. The appellate court thus reversed the judgment in the plaintiff insurance agent's favor for tortious breach of the covenant. The appellate court then had to consider whether to remand all or part the matter for a new trial. The court

faced two issues: whether on retrial a jury could find (1) a "special relationship" or (2) that the defendant was "stonewalling" the plaintiff. The court determined that a jury would have to decide if there was any stonewalling and remanded the matter on that issue; it, however, did not remand the matter on the first issue because it held "as a matter of law, there is no special relationship [in insurance agency contracts] which would provide an exception to the rule restricting relief to contract damages." *Id.; see also Elxsi v. Kukje America Corp.*, 672 F.Supp. 1294, 1299 (N.D.Cal. 1987) ("no special relationship between insurance company and insurance agent").

Reading *Multiplex* narrowly, plaintiff argues that its holding does not apply to the instant matter. This Court must disagree. Following the factors set forth in *Wallis v. Superior Court*, 160 Cal.App.3d 1109, 1118, 207 Cal.Rptr. 123 (1984), the appellate court in *Multiplex* thoroughly analyzed insurance agency relationships in general to hold that they do not amount to the "special relationships" contemplated in *Seaman's*. The court in *Multiplex* did not indicate that its analysis ought be limited to the single agency relationship in its case, and this Court is not at liberty to presume otherwise.

Plaintiff attempts to distinguish *Multiplex* on the ground that, unlike Mr. Rhodes, the plaintiff in *Multiplex* "did not in any way rely on the defendants." She completely misreads *Multiplex:* the appellate court specifically acknowledged the agent's reliance on the insurance company, but held that such reliance was insufficient to create a "special relationship," primarily because such reliance is made for commercial, "profit-motive" reasons. *See Multiplex*, 189 Cal.App.3d at 938–39, 235 Cal. Rptr. at 20–21.

Plaintiff's Count 4 in the instant matter makes no allegations that defendants "stonewalled" Mr. Rhodes in any alleged denial of any contracts, nor does it incorporate by reference any paragraphs that make such allegations. Because Count 4 does not allege "stonewalling" and cannot, as a matter of law, assert a special relationship for *Seaman's* tort purposes, the Court must now dismiss this count.

▮ Defendants object to Count 5 because, they argue, this count merely alleges that defendants have "wrongfully denied that any covenant of good faith and fair dealing exists in contracts with sales representatives," *see* Complaint ¶ 44, at 16. Were this statement the sole allegation for the *Seaman's* stonewalling tort, the Court would agree with defendants that such allegations are insufficient under *Seaman's* since the statement does not allege the bad faith denial of the existence of the *contracts at issue*. Paragraphs 45 and 49 of the complaint, however, add the necessary allegations to state a cause of action for "stonewalling." Specifically, these paragraphs allege that defendants wrongfully denied in bad faith certain implied contractual obligations concerning the proper administration of insurance policies sold by Mr. Rhodes. Of course, plaintiff has a heavy burden to establish these implied contractual obligations, and if she fails to establish these obligations, then her "stonewalling" count must, perforce, fail. But at this time, the Court may not consider what evidence plaintiff has on this point, for in 12(b)(6) motions, the Court's scope is restricted to the pleadings.[9] Because Count 5 just barely states a cause of action for stonewalling under *Seaman's*, the Court may not dismiss this count at this time.

Accordingly, the Court grants the motion to dismiss Count 4 (the tort claim for breach of covenant of good faith and fair dealing), but denies the motion to dismiss Count 5 (the tort claim for bad faith denial of contractual relations).

### III.

In conclusion, the Court holds (A) that the complaint is not impermissibly vague

---

**9.** Plaintiff's arguments in opposition depend largely on conclusory allegations and on undocumented assertions what certain testimony has been in other, unrelated civil actions. The Court struck these arguments from its consideration because not only is this a 12(b)(6) motion, but also the record before this Court includes no evidence (e.g., affidavits, depositions, transcripts, etc.) tending to support the allegations and assertions.

573

and does not require a more definite statement; (B) that plaintiff must plead fraud with greater particularity and that she shall, within 10 days of the entry of this order, amend her complaint as to the insufficient fraud allegations; (C) that plaintiff lacks standing to assert the claims of intentional and/or negligent interference with economic advantage, but only to the extent these claims seek damages for the period following the commencement of Mr. Rhodes' bankruptcy case, and that she has leave to amend her complaint within 10 days of the entry of this Order so as to properly name Mr. Rhodes as the party-plaintiff for the portion of these claims herein dismissed as to plaintiff; (D) that plaintiff is the real party in interest to assert the claims for negligent and/or intentional infliction of emotional distress and for punitive damages; and (E) that plaintiff's tort claim of a breach of the covenant of good faith and fair dealing states no cause of action but that her tort claim of a bad faith denial on contractual obligations does state a cause of action.

Pursuant to F.R.Civ.P. 12(a), defendants Fidelity Life and Beneficial Life shall answer the complaint, as it may be amended, within 20 days of the entry of this order.